**AIRLINES REPORTING CORPORATION, a Delaware corporation, Plaintiff,**

v.

**Garrett J. BARRY, a/k/a Gary Barry, a/k/a Gary Jackson, a/k/a Gary Jackson Travel, a/k/a Gary Boosalis, a/k/a Richard Arthur, a/k/a Richard Arthur Barnes Barry, a/k/a Richard A. Barnes-Barry, a/k/a James Barry; Corrine G. Barry, a/k/a Corrine Gallup; Faith Long, a/k/a Fay Long; Dollar Travel Services, Inc., a Minnesota corporation; Dollar Travel Agency, Inc., a Minnesota corporation; Commerical Consultants, Inc., a Minnesota corporation; Budget Travel, Inc., a Minnesota corporation; Dale N. Michaeloff, a/k/a Niman Michaeloff; Marie K. Michaeloff, a/k/a Marie Bridgeman; David Schroeder, a/k/a Donald Schroeder, a/k/a Donny Schroeder; Associated Travel Agents, Inc., d/b/a Boosalis Travel; Peter Boosalis; Elizabeth Moncada, a/k/a Elizabeth Wolfram, a/k/a Elizabeth Galchutt, a/k/a Betty Ellis, a/k/a Liz Jackson, a/k/a Liz Boosalis, a/k/a Peggy Doyle; Princess Travel, Inc., a Minnesota corporation, d/b/a Princess Travel, d/b/a Princess Travel West, d/b/a Princess Travel South; Lois Miller; Thrifty Travel Inc., an Arizona corporation; Dial Travel, Inc., an Arizona corporation; James Mancino, a/k/a Jimmy Mancino; Anthony Mancino, a/k/a Tony Mancino; John Mancino; Craig Mancino; Frederick Kraemer; Charlotte Skjonsby, a/k/a Charlotte J. Mees; Martin Raskin; First Bank Hopkins, a national banking association, formerly known as First Bank Produce; Selmar E. Undem; John W. McKellip, Defendants.**

Civ. No. 4–87–214.

United States District Court,
D. Minnesota,
Third Division.

July 14, 1987.

See also, 8th Cir., 825 F.2d 1220.

William Z. Pentelovitch and David F. Herr, of Maslon, Edelman, Borman & Brand, Minneapolis, Minn., for plaintiff.

Darwin J. Lookingbill, of Oppenheimer, Wolff, Foster, Shepard and Donnelly, St. Paul, Minn., for defendants First Bank Hopkins and Selmar E. Undem.

RENNER, District Judge.

Before the Court is defendants First Bank Hopkins and Selmar Undem's motion to dismiss from the complaint those claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982). Lengthy submissions have been received and considered that bear on matters extraneous to the pleadings. As a consequence, the mo-

tion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b).

## I.

The boldness and scale of the intrigue that is the focus of this lawsuit tends to obscure the minor role played in the affair by First Bank Hopkins and Undem (the Bank defendants). Plaintiff Airlines Reporting Corporation (ARC) alleges it is the victim of an effort by the nearly thirty named defendants to fraudulently procure airline travel documents valued in the millions of dollars. The airline ticket scam has spawned numerous civil lawsuits, criminal investigations and prosecutions. In earlier proceedings this Court preliminarily enjoined the defendants, with the exception of the Bank defendants, from trading or dealing in the disputed airline tickets in any manner whatsoever, and ordered the defendants to relinquish possession or reveal the location of any outstanding tickets. The preliminary injunction has been appealed and is fully submitted to the Court of Appeals.

In essence, ARC acts as a middleman between travel agents and airlines. Travel agencies are accredited by ARC and furnished with blank airline document stock. Money from the sale of tickets, minus commissions, is remitted to ARC and disbursed to the airlines. The alleged modus operandi employed by the accused travel agencies is sketched in a recent opinion involving one of the defendants in this suit and need not be repeated here in detail. *United States v. Kraemer*, 810 F.2d 173 (8th Cir. 1987). After a period of low activity, an agency would issue thousands of dollars, and in some cases hundreds of thousands of dollars, worth of airline tickets, never depositing the sales proceeds with ARC or returning the entire unused ticket stock following ARC's termination of the relationship. Many of the unaccounted for tickets were used for air transportation or cashed.

The facts as they relate to the Bank defendants are set out in the complaint and are not contested by defendants. First Bank Hopkins is the successor by merger to First Bank Produce. Undem served as First Bank Produce's president from 1976 to May 1984, and after the merger as executive vice-president of First Bank Hopkins. He retired in December of 1984.

The Bank defendants' relationship to the airline ticket scam is through defendants Peter Boosalis and Associated Travel Agents, Inc., who operated under the name Boosalis Travel. While president at First Bank Produce, Undem made an unsecured loan to Boosalis in the amount of $27,300 for a three-day period beginning Friday, July 29, 1983. Undem testified that the loan was made as a one-time accommodation at the request of "our good customer Ted Dantis." The loan proceeds were deposited into the account of Boosalis Travel, which showed a balance of $620. A debit memo was simultaneously prepared to accomplish repayment of the loan to First Bank Produce on the next business day, Monday, August 1. A letter dated the same day the loan was executed, signed by Undem and sent through the United States mails to Boosalis, stated, "This is to verify that the account balance as of this date for Associated Travel Agents, Inc. dba Boosalis Travel is $29,920."

A genuine issue of fact remains as to whether the account confirmation in the Undem letter was materially misleading. The letter constitutes the only direct participation of Undem and First Bank Hopkins in the alleged airline ticket operation.

Boosalis prepared a financial statement for Associated Travel Agents, dated July 31, 1983, claiming that its "Cash in Bank" was $27,920. This statement, with Undem's letter, was sent to ARC's predecessor, Airline Transportation Corporation (ATC), along with an application for accreditation of a Boosalis Travel office in St. Louis Park, Minnesota. ATC required a $25,000 cash balance to meet its accreditation standards. Boosalis admits that the sole purpose of the $27,300 loan from First Bank Produce was to gain accreditation from ATC. ARC maintains that the financial statement and application also contain misrepresentations and omissions beyond the account information in the Undem let-

ter. In reliance on the alleged misrepresentations, ATC notified Boosalis by mail of his application's approval on November 1, 1983.

On December 30, Boosalis submitted by mail the identical misleading financial statement with a second application to ATC for accreditation of a branch office of Boosalis Travel in Richfield. The Undem letter was not resubmitted. ATC's approval of the application was sent to Boosalis on April 3, 1984.

The ownership of Boosalis Travel was twice transferred more than a year after Boosalis Travel was initially authorized to sell airline tickets by ATC. Boosalis first sought ATC's approval of a change of ownership from himself to defendant Elizabeth Moncada on November 28, 1984. One month later, Boosalis and defendant Princess Travel, Inc. (Princess) submitted a joint application to ATC requesting its approval of the transfer to Princess of the two Boosalis Travel offices. Both applications were approved by ATC within weeks of their receipt. Neither of the new applications included information supplied by the Bank defendants.

Princess's sales of airline tickets averaged $2,000 per week from December, 1984 to early May, 1985. Then, in the one-week reporting period ending May 12, 1985, Princess reported selling 564 tickets with a face value of $577,637.00; for the period ending May 19, sales reportedly amounted to $744,116.00. Sales documentation indicates that most were purportedly sold for "cash." When settlement drafts were dishonored by Princess's bank and Princess failed to make proper alternative payment, ARC declared Princess to be in default and terminated their agreement. Some of the unused air travel stock was returned to ARC, but much remained unaccounted for by Princess. There are no allegations or evidence that First Bank Hopkins or Un-

dem knew of Princess's actions or were involved in the operation of the travel agency.

## II.

Section 1964(c) of RICO enables private litigants to bring civil actions for violations of § 1962, entitled "Prohibited Activities." Counts One through Six of the complaint charge defendants with various RICO offenses. The first three counts assert substantive violations under subsections (a), (b) and (c) of § 1962. Section 1962(a) makes illegal the investment of income derived from a pattern of racketeering activity in an interstate enterprise. Section 1962(b) forbids the acquisition or maintenance of an enterprise through the proscribed pattern of racketeering activity. Section 1962(c) prohibits the operation of an interstate enterprise through a pattern of racketeering activity. Counts Four through Six are brought under § 1962(d) and allege parallel conspiracies to violate each of § 1962's substantive provisions. Count Seven requests injunctive relief to prevent further RICO violations and depends for viability on the prior counts. Counts Eight through Fourteen of the complaint allege state causes of action and are not at issue in this decision.[1]

■ Initially, this Court questions whether § 1962(a) or (b) applies to the Bank defendants. To state a claim for damages, a plaintiff must allege injury "by reason of a violation of" a substantive RICO provision. 18 U.S.C. § 1964(c) (1982). *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). By its words, § 1962(a) is violated, not by racketeering activity itself, but rather by use or investment of racketeering income in an enterprise.[2] ARC's injuries arose directly from

---

1. The state law claims allege misrepresentation, fraudulent omission, conversion and conspiracy, and seek replevin, punitive damages and recovery for violations of state criminal statutes.

2. 18 U.S.C. § 1962(a) provides in part:
   It shall be unlawful for any person who has received any income derived, directly or indi-

rectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engage in, or the

the Bank defendants' alleged racketeering acts, not from their investment of racketeering proceeds. In other words, even if it were established that the Bank defendants violated § 1962(a), ARC has failed to allege how this violation caused it any injury. *Gilbert v. Prudential-Bache Sec., Inc.,* 643 F.Supp. 107, 109 (E.D.Pa 1986); *Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532, 1537 (D.Mass.1986); *Heritage Ins. Co. of Am. v. First Nat'l Bank of Cicero,* 629 F.Supp. 1412, 1417 (N.D.Ill. 1986). *Contra Louisiana Power & Light Co. v. United Gas Pipe Line Co.,* 642 F.Supp. 781, 805–807 (E.D.La.1986).

Similarly, to recover damages "by reason of" a violation of § 1962(b), a plaintiff must demonstrate an injury resulting from the acquisition or maintenance of an interstate enterprise through criminal behavior.[3] Neither the pleadings nor the affidavits suggest how the Bank defendants took over or supported an enterprise by providing fraudulent account information, thereby causing harm to ARC, although the complaint does sufficiently allege injury under § 1962(c) "by reason of" racketeering itself. Counts One and Two will be dismissed.

### III.

To find a violation of § 1962(c), ARC must establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted).[4] The thrust of the Bank defendants' motion is that ARC has failed to allege a pattern of racketeering activity. RICO defines "racketeering activity" to encompass "any act which is indictable" under a number of federal criminal laws, including the mail

fraud statute. § 1961(1)(B). A pattern of racketeering activity "requires at least two acts of racketeering activity." § 1961(5) Despite the facial simplicity of these words, they have spawned a host of decisions in the burgeoning field of RICO litigation.

The Supreme Court has noted that the expansive use of civil RICO has resulted in part from "the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Sedima,* 473 U.S. at 500, 105 S.Ct. at 3287. In a now famous footnote, the Supreme Court pointed out that while at least two predicate acts of racketeering activity are required to form a pattern, two acts may not be sufficient. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court read the legislative history to support its view that two isolated acts of racketeering activity do not make a pattern, and focused on the need to show "continuity plus relationship." *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969)). The Court also suggested borrowing the definition of "pattern" from 18 U.S.C. § 3575(e):

> [C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

*Sedima,* 483 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; *see also United States v. Ellison,* 793 F.2d 942, 950 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986).

In the wake of *Sedima,* the courts have adopted contrary standards for determining whether the pattern requirement has been satisfied. *Compare United States v. Ianniello,* 808 F.2d 184, 192 (2d Cir.1986) (pattern established where a person commits at least two predicate acts for the

---

activities of which affect, interstate or foreign commerce.

**3.** 18 U.S.C. § 1962(b) provides in part:
It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**4.** 18 U.S.C. § 1962(c) states in part:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity....

purpose of furthering the same criminal enterprise) *and Bank of Am. Nat'l Trust & Savings Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986) (predicate acts need not occur in separate criminal episodes or schemes to establish a pattern) *with International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 154 (4th Cir.1987). *See also Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986) ("we agree with those courts that have steered a middle course between … these extremes").

The Court of Appeals for the Eighth Circuit adopted a narrow interpretation of pattern in *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). *See also Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987); *Deviries v. Prudential-Bache Sec., Inc.,* 805 F.2d 326 (8th Cir.1986); *Madden v. Gluck,* 815 F.2d 1163 (8th Cir.1987) (per curiam); *Ornest v. Delaware N. Companies,* 818 F.2d 651 (8th Cir.1987). The defendants in *Superior Oil Co.* had committed several related acts of mail and wire fraud in furtherance of a single scheme to steal gas from plaintiff's pipeline. The acts, part of a continuous criminal scheme, easily satisfied the "relationship" prong of the *Sedima* test. The Eighth Circuit declined to find a pattern, however, since the element of "continuity" was not demonstrated. "There was no proof [that defendants] had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere." 785 F.2d at 257.

■■■ The theory of ARC in the present case is that the Bank defendants committed at least five separate acts of mail fraud.[5] In addition to the Undem letter containing the false account information, ARC argues that the Bank defendants may also be held liable as principals for the mailing by Boosalis of the initial false and misleading application for accreditation, the grant of ac-

creditation by ATC sent to Boosalis Travel, the mailing of the second application for accreditation of the branch office, and the mailing of that accreditation by ATC to Boosalis Travel. Where there is a scheme to defraud by use of the mails, an individual need not personally participate in or authorize each mailing within the general scope of the scheme. *United States v. Cohen,* 516 F.2d 1358, 1364 (8th Cir.1975); *United States v. Nance,* 502 F.2d 615, 619 (8th Cir.1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). Mailings by non-defendants or victims may be "caused" by or attributed to a defendant where the use of the mails in furtherance of the scheme to defraud could reasonably be foreseen. *United States v. Massa,* 740 F.2d 629, 642 n. 7 (8th Cir.1984) *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Atkinson v. United States,* 344 F.2d 97, 99 (8th Cir.1965), *cert. denied,* 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1965). All that is necessary to establish a mailing under 18 U.S.C. § 1341 is a showing that a defendant acted "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended…." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954).

The Bank defendants assert they may only be accused of a single criminal act, the issuance of Undem's confirmation letter. On a motion for summary judgment, the Court must give the opposing party the benefit of all reasonable inferences to be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986); *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Under this standard, Boosalis's incorporation of the account confirmation in the first application and ATC's mailing of the accreditation notice for the

---

5. The mail fraud statute, 18 U.S.C. § 1341, states in part that:

   [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises … places in any post office or authorized depository … any matter or thing whatever to be sent or delivered by the Postal Service … or knowingly causes to be delivered by mail … any such matter or thing … [shall be punished for mail fraud].

first office may have been reasonably expected. These actions are indictable mail fraud and are treated as racketeering activity under RICO. 18 U.S.C. § 1961(1)(B) (1982). Whether the inclusion of the misleading account information in Boosalis's second application to ATC five months later was reasonably foreseen is more problematic. It is unlikely that outdated account balance information would still be valuable after such a lapse of time. In any event, ARC has made a showing sufficient to infer at least three predicate crimes attributable to these defendants.

■ The analysis then moves to a determination of whether the predicate acts of the Bank defendants form a "pattern of racketeering activity." 18 U.S.C. § 1961(5) (1982). Applying the two-prong *Sedima* test of relationship and continuity, there is insufficient evidence from which the Court may infer the relation of the Bank defendants' mail fraud to the larger airline ticket scam. The Court assumes, without making a specific finding, that the criminal acts of the other defendants in this litigation amount to a RICO pattern. The Bank defendants, however, are not accused of receiving or converting airline tickets or participating in the operation of the travel agencies, as are the other defendants. The fraud allegedly perpetrated by Undem to accomplish accreditation of Boosalis Travel was many steps removed from those criminal acts which most directly caused ARC's losses nearly two years after the Undem letter was written. In the intervening period, the ownership of Boosalis Travel was twice transferred to new parties and each transfer presumably required new financial and credit confirmations before ARC would approve the transfers. It has been stated that to be related, the predicate acts must evince common perpetrators, victims, methods of commission, or similar motive or purpose. *Medallion TV Enterprises v. SelecTV of Cal., Inc.,* 627 F.Supp. 1290, 1296 (C.D.Cal.1986). ARC itself is the common victim that connects the Bank defendants to the ticket scheme. But there is no probative evidence that Undem cooperated with or was aware of the other perpetrators except Boosalis, committed his miscon-

duct in a manner comparable to the other defendants, or associated with the objectives of the large fraudulent enterprise. If the Court credited all five acts of mail fraud that ARC attributes to the Bank defendants, it would find those acts were interrelated. This would simply support the inference that the Bank defendants were part of a lesser, isolated effort with Boosalis to gain accreditation of the two travel offices from ATC.

The Court is also unconvinced that ARC has demonstrated the continuity necessary to refute the motion for summary judgment. A single instance of providing misleading account information hardly qualifies as regular or ongoing illegal activity. The predicate crimes of which Undem is accused all arose from the account confirmation letter. The additional charges of mail fraud do little to enhance the pattern claim.

> Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts ... may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity.

*Lipin Enterprises v. Lee,* 803 F.2d 322, 325 (7th Cir.1986) (Cudahy, J. concurring).

The facts at best show that the predicate acts were committed in furtherance of the single, limited goal to obtain ATC's approval of the Boosalis Travel offices. There is little evidence that the Bank defendants have engaged in similar activities in the past, or have been involved in other criminal activities, or pose a threat of similar activity in the future. *Superior Oil Co.,* 785 F.2d at 257. ARC points to two additional letters signed by bank officer J.E. Campbell of First Bank Produce which purportedly provided account balance information for Boosalis Travel and defendant Budget Travel. The letters were produced by other defendants in the course of this case; neither letter has been located in ARC's or First Bank Hopkins' files. ARC does not

allege that these letters constitute predicate acts, but argues they suggest other criminal activity by the Bank defendants. Even if these letters were admissable at trial over objections for lack of foundation, the Court fails to see how a jury could reasonably conclude, absent a showing they represent misconduct by the bank, that they demonstrate continuous criminal activity by the Bank defendants. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The complaint and evidence introduced through affidavit do not establish a pattern of racketeering activity by the Bank defendants. Their acts comprised a singular fraudulent episode over the course of no more than four months whose objective was to obtain accreditation of Boosalis Travel from ATC. There is insufficient evidence to implicate the Bank defendants in the larger criminal scheme of other defendants to procure airline tickets. The count alleging violation of § 1962(c) will be dismissed.

## IV.

■ A conclusion that the Bank defendants were not involved in a pattern of racketeering does not necessarily absolve them from the charge that they conspired to violate RICO. Section 1962(d), on which the remaining RICO counts are based, simply states, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection[ ] (a), (b), or (c) of this section." A number of circuits have held that a defendant must personally commit or agree to commit the predicate crimes before he or she has transgressed

§ 1962(d). *E.g., United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).[6] The plurality of courts of appeal have come to the contrary conclusion that a defendant must agree only to the commission of the predicate crimes in order to establish participation in the RICO conspiracy. *See, e.g., United States v. Neapolitan*, 791 F.2d 489, 494–98 (7th Cir.) (discussing the conflicting decisions of the various circuits), *cert. denied*, —— U.S. ——, 107 S.Ct. 421, 422, 93 L.Ed.2d 371 (1986).[7]

The Eighth Circuit has yet to determine which of the two alternatives applies to RICO conspiracies. This Court believes that the approach taken by the *Neapolitan* court best comports with the purposes of RICO and with general conspiracy concepts. The statutory language does not specifically impose the requirement of an agreement to personally commit the predicate offenses. Such a requirement would thwart the congressional objective to broaden the array of weapons available against organized crime. Furthermore, the RICO statute was passed against a backdrop of traditional conspiracy principles, which do not require such a stringent level of personal involvement. *United States v. Carter*, 721 F.2d at 1529.

■ The RICO statute does not create a new crime of conspiracy, but serves to increase sanctions for conspiratorial conduct carried out in a racketeering context. The objective of a RICO conspiracy is the commission of a substantive RICO crime. *Id.* at 1530. An agreement to commit predicate acts standing alone is not sufficient to support a charge of conspiracy under § 1962(d). *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n. 8 (3rd Cir.1984), *cert. denied*, 469 U.S.

---

6. *See also United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983); *United States v. Martino*, 648 F.2d 367, 394 (5th Cir. 1981), *cert. denied*, 456 U.S. 943, 949, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982).

7. *See also United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986); *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S.

971, 106 S.Ct. 336, 88 L.Ed.2d 236 (1985); *United States v. Truglio*, 731 F.2d 1123, 1133 (4th Cir.1984), *cert. denied*, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 130 (1985); *United States v. Tille*, 729 F.2d 615, 619–20 (9th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); *United States v. Carter*, 721 F.2d 1514, 1528–31 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984).

1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). As with general conspiracy law, the defendant must know the object of a conspiracy and manifest his agreement to join with the others to achieve the common purpose. Thus, to succeed under a RICO conspiracy theory, the plaintiff must demonstrate a defendant's consent to two facets of the conspiracy: commission of two predicate offenses and violation of a substantive RICO provision, typically § 1962(c).

> [A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise.

*United States v. Neapolitan*, 791 F.2d at 499 (citations omitted).

There is overwhelming evidence from which to infer a racketeering conspiracy under § 1962(d), but nothing to inculpate the Bank defendants as members. Their alleged acts of mail fraud are enough to suggest their assent to the perpetration of at least two predicate offenses. But, as previously discussed, the Bank defendants were not participants in the larger airline ticket scheme. No evidence exists, other than their relation to Boosalis, to indicate they agreed or belonged to the conspiracy, or were aware of its goals, or willfully aided its success. The broad reach of RICO was intended to trap the "smallest fish," those who are minimally associated with a racketeering enterprise, as well as the insulated crime leaders. *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). The net should not be cast so wide, however, so as to snare unintended fringe or remote actors. *See United States v. Neapolitan*, 791 F.2d at 498.

## V.

Based on the foregoing, IT IS HEREBY ORDERED that summary judgment is granted and Counts One through Seven are

dismissed as to defendants First Bank Hopkins and Undem.