Phyllis LIVINGSTON, Bert Mason, and all others similarly situated, Plaintiffs,

v.

ITT CONSUMER FINANCIAL CORPO-RATION, a Delaware Corporation, Thorp Credit and Thrift, a Minnesota Corporation; Aetna Finance, a Wisconsin Corporation; and ITT Financial Corporation, a Delaware Corporation, Defendants.

No. 3–91 CIV 809.

United States District Court,
D. Minnesota,
Third Division.

June 4, 1992.

Reinhardt & Anderson by Mark Reinhardt, St. Paul, Minn., and Chestnut & Brooks by Karl Cambronne, Minneapolis, Minn., for plaintiffs.

Dorsey & Whitney by Janice M. Symchych, Minneapolis, Minn., for defendants.

## ORDER

ALSOP, District Judge.

The above-entitled matter came on for hearing before this court on April 10, 1992 upon the motion of all defendants for sum-

mary judgment. Defendants attack plaintiffs' twenty-count complaint on a variety issues. For the reasons set forth below, defendants' motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND [1]

Defendants in this action are a group of closely related corporations which together operate a nationwide small consumer loan business referred to by plaintiffs as ITT Financial Services. Plaintiffs Phyllis Livingston and Bert Mason had several small loans with ITT Financial Services. Both Livingston and Mason are Minnesota residents, and all of their loans were made in Minnesota.

In their complaint, plaintiffs allege that they are victims of defendants' alleged practice of illegally and fraudulently deferring monthly small loan payments without the knowledge or consent of the borrower. Plaintiffs contend that defendants carried out this practice by forging borrowers' signatures on documents purportedly authorizing loan deferrals, and concealing such deferrals from the borrowers. Plaintiffs seek to represent a class including persons who have obtained loans from ITT Financial Services in Minnesota, Wisconsin, and Illinois. Plaintiffs' complaint sets forth twenty causes of action against defendants, including RICO claims, Truth-in-Lending Act violations, numerous state law claims for regulated loan act violations, usury, common law fraud and deceptive trade practices. This matter has not been certified as a class action.

Plaintiff Livingston obtained her loan on March 9, 1989 in St. Louis Park, Minnesota. In October, 1989, Livingston's loan was deferred, at a charge of $59.73. Livingston alleges she was not informed of this deferral, and that the deferral was imposed as a result of a forged document.

On July 8, 1991, Livingston filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. The loan at issue in this case comprised a large portion of Livingston's outstanding debt. In the course of the Chapter 13 bankruptcy proceeding, Livingston asserted no claims against defendants and indicated that the loan was not contingent or disputed. The bankruptcy court issued an order confirming a plan on September 9, 1991. No party appealed this order. Subsequently, in February, 1992, Livingston filed a petition to convert her case to a Chapter 7 case. In connection with this petition, Livingston did identify her claim based on the alleged fraudulent deferrals.

Plaintiff Bert Mason first became a loan customer of defendants in 1987. Mason claims to have been the victim of up to fourteen fraudulent loan deferrals. In August, 1988, Mason was sued in Hennepin County Conciliation Court for the balance due on his loan. The case remained pending for over one year. Mason never responded in the matter, failed to appear at trial, and judgment was entered against him on October 11, 1989. Mason claims he was unaware of any deferrals at the time this judgment was entered.

Additional allegations and evidence will be referenced as necessary in the following discussion.

## II. DISCUSSION

Defendants seek summary judgment on all of Livingston's and Mason's claims on the ground of res judicata. Alternatively, defendants seek dismissal of the RICO claims, the claims for violation of Wisconsin and Illinois law, plaintiffs' claim of fraudulent concealment, and plaintiffs' claims for punitive damages. The court will consider each issue in turn.

### A. Res Judicata

The doctrine of res judicata precludes the assertion of a claim after a final

---

1. This potentially complex matter is in the early stages of discovery, the complaint having been filed in December, 1991. Defendants do not, at this early stage of the litigation, directly challenge the substance of plaintiffs' allegations. A brief outline of the allegations of the complaint will therefore suffice. Because defendants attack plaintiffs' claims in large part based upon prior litigation between the parties, more detailed discussion of the individual plaintiffs' claims is necessary.

judgment on the merits in a prior suit between the same parties or their privies and based on the same cause of action. Res judicata bars claims which were actually litigated in the prior suit or which could properly have been raised and determined in a prior suit. *See Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir.1991). In the Eighth Circuit, res judicata has been held applicable to bankruptcy proceedings. *See Lovell v. Mixon,* 719 F.2d 1373 (8th Cir.1983); *In re Hoffman,* 99 B.R. 929, 936 (N.D.Iowa 1989). In Minnesota, conciliation court judgments are also accorded res judicata effect. *Mattsen v. Packman,* 358 N.W.2d 48 (Minn.1984). Defendants contend that a straightforward application of the principles of res judicata reveals that the claims of both Livingston and Mason are barred as a matter of law. An exception to the general res judicata principles comes into play in this case, however.

■ Ordinarily, actual knowledge of the plaintiff of a potential claim is not a requirement for the application of res judicata. An exception to this general principle exists in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action. *See, e.g., Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986) (citing *Restatement (Second) of Judgments* § 26 comment j).[2]

■ The conduct forming the basis for plaintiffs' claims in the instant case involves forgery—by definition a self-concealing act. In addition, plaintiffs have introduced evidence that defendants actively concealed their conduct by, among other things, making false records entries and destroying customer copies of the deferrals. Accordingly, plaintiffs' claims are not barred by res judicata unless plaintiffs knew of the existence of their claims prior to conclusion of their previous litigation with the defendant.

■ With respect to plaintiff Bert Mason, defendants have introduced no evidence that he was aware of the allegedly fraudulent deferrals of his loan at the time judgment was entered against him in conciliation court. Defendants seek to charge Mason with the actual or constructive knowledge of his counsel at the time of the conciliation court proceeding. Mason was not represented by his current counsel, or any counsel, in connection with the 1989 conciliation court proceeding. The only relationship between Mason and his current counsel in 1989 related to Mason's status as a class member in two other class actions against these defendants, known as the *Hohn* and *Hawkins* litigation, in which Reinhardt & Anderson was plaintiffs' counsel. Mason was not a named plaintiff in those actions. The *Hohn* and *Hawkins* cases involved challenges to defendants' insurance sales practices; they did not include allegations of fraudulent loan deferrals. This limited contact relating to a different claim is an insufficient basis on which to impute knowledge of counsel as to fraudulent loan deferrals upon Mason for res judicata purposes. Even if counsel's knowledge were relevant, a genuine issue of fact exists as to what counsel knew or through reasonable diligence should have known in 1989 about Mason's loan deferrals. Summary judgment cannot be granted against Mason on the ground of res judicata.

■ As to plaintiff Phyllis Livingston, the evidence in the record establishes that she was aware that she had a potential claim against defendants based on an improper loan deferral at least six weeks before confirmation of the Chapter 13 plan on September 9, 1991. In her deposition, plaintiff at one point states that she knew of the allegedly forged loan deferral before her bankruptcy proceeding was finished. Later, upon questioning by her counsel, she appears to retract that statement, claiming

---

**2.** Defendants cite *Engelhardt v. Bell & Howell Company,* 299 F.2d 480 (8th Cir.1962) for the proposition that the fraud and misrepresentation exception to res judicata does not exist in the Eighth Circuit. *Engelhardt* does not stand for this proposition. Although the court states

that "justifiable ignorance" of a claim will not avoid the application of res judicata, the court in *Engelhardt* was not faced with a claim of fraudulent concealment of the conduct forming the basis for the claim.

she learned of the deferral after her Chapter 13 case but before the Chapter 7 case. After the hearing on this motion, plaintiffs submitted to the court a letter sent to Livingston by her counsel dated July 23, 1991. Counsel states in this letter, "I have talked to you about the fact that I believe you had a 'cash deferral' on your loan. I do not think this was proper. I will be investigating this further ..." This letter makes clear that Livingston was aware of her improper loan deferral claim no later than July 23, 1991.

Livingston thus had an opportunity and an obligation to assert this claim in her Chapter 13 bankruptcy proceeding. The deferral increased the amount due on the loan and may have formed the basis for a claim that the loan should be declared void.[3] The deferral was thus integrally related to the Chapter 13 bankruptcy proceeding which involved the same loan and the same parties or their privies. "An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided" before confirmation. *In re Patterson,* 107 B.R. 576, 578 (Bankr.S.D.Ohio 1989). *See also* 5 *Collier on Bankruptcy,* ¶ 1327.01 (discussing res judicata effect of Chapter 13 confirmed plan). Livingston could have raised her improper deferral claim in her Chapter 13 proceeding but failed to do so. Livingston's identification of her claim in her later-filed Chapter 7 petition did not cure this failure. Accordingly, her claims in the instant case, all of which arise from the allegedly fraudulent loan deferral, are barred as a matter of law.

### B. Challenges To Plaintiffs' Rico Claims

#### 1. *The Standing of Mason.*

■ Defendants contend that Mason lacks standing to assert a RICO claim because Mason has suffered no "injury to business or property" by reason of the alleged RICO violations. *See* 18 U.S.C. § 1964(c). Defendants contend that Mason lost no money due to deferrals on his account because the deferrals on his loan

were so-called "non-cash deferrals," for which no fee is charged. Mason counters that although he was not charged a fee for the deferral itself, the consequence of every non-cash deferral is the continuation of the high loan interest rate for a period of time greater than originally contracted for. The contractual interest rate on the loan exceeded any post-judgment interest rate allowed by statute, according to Mason. Thus, if defendants had sought judgment on Mason's loan instead of deferring the loan, Mason's interest charges would have been reduced.

The court concludes that whether Mason actually suffered an out-of-pocket injury due to the "non-cash" loan deferrals is an issue of fact which cannot be resolved on the present state of the record. Summary judgment is therefore inappropriate.

#### 2. *Section 1962(a) RICO Claim.*

18 U.S.C. § 1962(a) makes it unlawful for:

> Any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise ...

■ A civil RICO plaintiff may recover for a violation of § 1962(a) only if injured "by reason of" that violation. 18 U.S.C. § 1964(c).

Defendants attack plaintiffs' § 1962(a) RICO claim on the face of the complaint, contending that the complaint fails to adequately allege an injury "by reason of" the use or investment of income. Courts are split on the question—whether a civil RICO plaintiff asserting a claim for violation of § 1962(a) must allege injury from the "use or investment" of racketeering income (an "investment injury"), or whether injury from the racketeering activity itself is sufficient to confer standing under that section. *See* David B. Smith & Terrance G. Reed, *Civil RICO* ¶ 6.04[5][a] (1992) (col-

---

**3.** Plaintiffs have made this claim in the instant case.

lecting cases on this issue and finding a substantial split of authority, although the majority of courts appear to require some form of investment injury). To this court's knowledge, six of the circuit courts have addressed the question. Five of the six have held that an investment injury is required under § 1962(a). *Brittingham v. Mobil Corp.*, 943 F.2d 297, 304 (3rd Cir. 1991); *Danielsen v. Burnside–Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1229 (D.C.Cir.1991); *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 494 (6th Cir.1990); *Quaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir.1990); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *but see Busby v. Crown Supply, Inc.*, 896 F.2d 833, 839 (4th Cir.1990) (injury from racketeering acts sufficient).

The arguments on the propriety of an investment injury requirement under § 1962(a) have been exhaustively canvassed in the opinions cited above. In the absence of Eighth Circuit authority on this question, this court finds itself in agreement with the majority view that an investment injury is required under § 1962(a).[4] This approach is consistent with the language of § 1962(a), the clear import of which is that it is the use or investment of income, and not racketeering activity alone, which triggers a violation of § 1962(a). The court also agrees with the comments of Circuit Judge Sentelle in *Danielsen*, 941 F.2d at 1230:

> [I]f it were true under any theory that a predicate act injury would be sufficient to provide standing to a claimant under § 1962(a), then it would be difficult to understand why Congress enacted § 1962(a). In other words, if allegations sufficient to base a § 1962(c) action meet all the requirements of a § 1962(a) alle-

gation, then why did Congress pass both? We are required to interpret acts of Congress in such a fashion as to give meaning to each word of the statute.... To meet this standard in construing RICO, we must conclude that there is some different requirement for violation of § 1962(a) than for violation of § 1962(c).

(citations omitted).

Having concluded that an allegation of investment injury is required, the court must now determine whether plaintiffs' complaint adequately alleges such an injury. Paragraph thirty-seven of plaintiffs' First Amended Complaint alleges in part that "[defendants'] investment [of racketeering income] enabled the enterprise to continue its illegal activity, and also encouraged it to expand the illegal activity described herein. This directly led to a significantly increased number of victims and significantly increased the overall harm."

Unquestionably, the direct cause of plaintiffs' and any potential class members' alleged injuries was the fraudulent deferral practice to which they were subjected. The causal connection between the defendants' investment of any resulting income and the plaintiffs' injuries is tenuous at best. Any such connection is insufficient to confer standing to assert a § 1962(a) claim. Section 1962(c) is the proper avenue to redress plaintiffs' injuries in this case. Accordingly, plaintiffs' claim for violation of § 1962(a) must be dismissed. *See Brittingham*, 943 F.2d at 305 (finding allegations of general reinvestment of profits of corporation inadequate to confer standing under § 1962(a)).

### 3. Section 1962(c) and 1962(d) RICO Claims.

Plaintiffs also assert RICO claims for violation of 18 U.S.C. §§ 1962(c) (opera-

4. Three other judges in the District of Minnesota have considered this issue. In *Airlines Reporting Corp. v. Barry*, 666 F.Supp. 1311, 1314 (D.Minn.1987), Judge Renner dismissed a § 1962(a) claim for lack of investment injury. Judge Magnuson has declined to impose this requirement on § 1962(a) claims. *Starks v. Rent–A–Center*, RICO Bus. Disputes Guide (CCH) ¶ 7518, 1990 WL 120678 (D.Minn.1990); *Midwest Federal Savings and Loan Ass'n of Minneapolis v. Green Tree Acceptance, Inc.*, No. 3–88–0669 (D.Minn.1988). Judge Rosenbaum has indicated disagreement with an investment injury requirement. *Rosemount Co–Generation Joint Venture v. Northern States Power Co.*, RICO Bus. Disputes Guide (CCH) ¶ 7697, 1991 WL 13729 (D.Minn.1991). The instant order apparently ties the score.

tion of an enterprise through a pattern of racketeering activity) and 1962(d) (conspiracy to commit RICO violations). The essential elements for these claims are well-established in this circuit. *See Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 995 (8th Cir.1989). Plaintiffs adequately allege all of the essential elements of each of these claims. Defendants argue that the § 1962(c) claim is deficient for failure to allege an enterprise distinct from the persons allegedly committing the racketeering activity. The court finds the allegations sufficient on this point. Whether the enterprise alleged is in fact distinct from the persons identified in the complaint is a question of fact which cannot be resolved on the present state of the record.

### C. Other Issues

The balance of the issues defendants raise can be dealt with summarily. Defendants' motion to dismiss the claims for violation of Wisconsin and Illinois law will be denied with leave to renew at the time of plaintiffs' motion for class certification. Defendants' motion regarding plaintiffs' allegations of fraudulent concealment will be denied at this time. Application of the numerous statutes of limitations to specific claims can await further discovery. Plaintiffs have stipulated to dismissal without prejudice of their punitive damages claims, recognizing that under *Minn.Stat.* § 549.-191 such claims can only be asserted through a properly filed motion to amend the complaint.

Accordingly, upon the foregoing and all the files, records, and proceedings herein,

IT IS ORDERED That:

1. Defendants' motion for summary judgment on all claims of Plaintiff Livingston as barred by the doctrine of res judicata is GRANTED; Livingston's claims are dismissed with prejudice.

2. Defendants' motion for summary judgment on all claims of Plaintiff Mason as barred by the doctrine of res judicata is DENIED.

3. Defendants' motion to dismiss counts I–III of the complaint is GRANTED in part as to Count I asserting a claim under 18 U.S.C. § 1962(a) and Count I is dismissed with prejudice; in all other respects the motion is DENIED.

4. Defendants' motion to dismiss Counts V, VI, VIII, IX, XI, XII, XIV, and XV of the complaint and those portions of counts XVI, XVIII, XIX, and XX of the complaint based on Wisconsin or Illinois law is DENIED with leave to renew at the time of plaintiffs' motion for class certification.

5. Defendants' motion for summary judgment or dismissal on plaintiffs' allegations of fraudulent concealment is DENIED at this time.

6. Defendants' motion to dismiss plaintiffs' claims for punitive damages for failure to comply with Minn.Stat. § 549.191 is GRANTED; said claims are dismissed without prejudice.