In re Sam BALDWIN, Jr., Debtor.

Sam Baldwin, Jr., et al., Plaintiffs,

v.

Citigroup, Inc., et al., Defendants.

Citigroup, Inc., et al., Plaintiffs,

v.

Sam Baldwin, Jr., et al., Defendants.

Civ.A. No. 03–MC–3152–N.
Adversary Nos. 03–03013, 03–03014.

United States District Court,
M.D. Alabama,
Northern Division.

March 10, 2004.

John R. Chiles, Michael L. Hall, Reid S. Manley, Janine L. Smith, Burr & Forman LLP, Birmingham, for plaintiffs.

Curtis C. Reding, Montgomery, AL, Pro se, trustee.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before this court on review of the Proposed Findings of Fact and Conclusions of Law in Bankruptcy Case No. 01–06532, Civil Action No. 03–MC–3152–N. Citigroup, Inc., Citifinancial Company, Citifinancial, Inc., Associates First Capital Corporation, Citifinancial Corporation 216 LLC, Citifinancial Mortgage Company, Inc., and Citifinancial Corporation LLC ("Creditor")[1] raised five arguments as to why the bankruptcy court should grant summary judgment enjoining Sam Baldwin ("Debtor") and Lula Baldwin (collectively "Consumers")[2] from prosecuting an adversary proceeding: 1) judicial estoppel, 2) equitable estoppel, 3) waiver, 4) res judicata, and 5) the effect of 11 U.S.C. § 1327(a). After the bankruptcy court issued its Proposed Findings of Facts and Conclusions of Law, the Creditor timely objected to the Proposed Findings regarding the doctrine of res judicata and the binding effect of 11 U.S.C. § 1327(a).

### II. FACTS AND PROCEDURAL HISTORY[3]

Sam Baldwin cannot read; the fourth grade was the highest level he reached in

Richard A. Lawrence, C. Lance Gould, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, Al, for debtor.

1. They collectively term themselves creditor; the court will refer to them accordingly. Creditor's Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law at 1 ("Creditor's Objection").

2. Sam Baldwin, Jr. and Lula Baldwin refer to themselves in this manner in their brief; the court will refer to them accordingly. Re-

sponse to Creditor's Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law at 1 ("Debtor's Response").

3. The facts are taken from the bankruptcy court's Proposed Findings, the parties' briefs, and the Creditor's exhibits. The Creditor

school. He recognizes some numbers and can apparently write and identify his signature. Nevertheless, Mr. Baldwin handles financial matters for his family, with help from his daughter and granddaughter, who read bills to him. When paying, he receives assistance at Winn–Dixie or Western Union in filling out bill payment forms. He and his wife Lula Baldwin, a co-debtor on the loan, have been married for over forty years. Mrs. Baldwin attended school through the fifth grade. Her reading ability is minimal; it is unclear whether this ability extends beyond her signature and recognizing numbers. During his lifetime, Mr. Baldwin has worked as helper in installing floor tiles, driven a dump truck, and now does clean up work outdoors for the Alabama Department of Transportation; picking up sticks and weed-eating are included among his duties. Mrs. Baldwin has worked as a maid.

Mr. Baldwin alleges that Associates (Associates Financial Services Company of Alabama, Inc) would call him and send letters, informing him that they could help with his financial situation. His response was that he "could use some help if they would help me." Sam Baldwin, Jr. Deposition at 16. He was informed that he could save money, but would need to mortgage his home and have insurance. When the loan application was being signed by Baldwin, he indicates that the lender's agents were aware that he could not read, but that no one read the application to him. *Id.* at 51–54. With the insurance, "[t]hey just told me this was credit life insurance. You need to sign your signature, and that's what I did." *Id.* at 26. As for the other loan application materials,

Baldwin indicates that he "signed them because they told me what they was, and told me to sign here and I signed them." *Id.* at 55. The Baldwins indicate that their daughter and grand-daughter were working and in school respectively when the paperwork was being completed and that they did not have anyone else available to read the documents to them.

In January of 2003, Sam Baldwin, Jr. and his wife Lula Baldwin were receiving calls, and phone calls were even being received by his grand-daughter, with the Creditor saying "threatening things over the phone[,]" related to foreclosure upon their home. *Id.* at 79. Behind on his payments and in fear of foreclosure, Mr. Baldwin sought help. He was going to try to "save my home [and] . . . to defend myself." *Id.* at 78. The Baldwins realized that they "had to do some kind of something." *Id.* at 83. That something involved finding a lawyer and eventually filing a lawsuit. It was January of 2003, when Baldwin uncovered his claims against the Creditor. Due to their inability to read and lack of knowledge of the internal operations of the Creditor, the Baldwins are highly dependent upon their attorney Mr. Gould, not only for legal guidance, but also to unearth the factual allegations underlying the Creditor's allegedly improper actions.

Previously, Sam Baldwin, Jr., the Debtor, filed a chapter 13 petition for relief on October 16, 2001. He did not disclose a possible cause of action arising out of a loan transaction with the Creditor. The Debtor listed Citifinancial Mortgage Company, Inc. as a secured creditor with a lien on the debtor's residence, with Lula Baldwin, the Debtor's wife listed as a co-debt-

states that "the facts subject to this proceeding are undisputed." Creditor's Objection at 6 n. 3. The bankruptcy court indicated that "[t]he parties agree that there is no genuine issue of material fact." Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law at 4 ("Proposed Findings").

or. No other secured creditors were listed. He filed a plan proposing to cure the pre-petition arrearage on the mortgage through the trustee with future payments to be made directly to the creditor. Under the proposal one hundred percent payment would be made on allowed unsecured claims over a twenty seven month period.

Neither the Creditor nor the Chapter 13 trustee filed an objection to the confirmation of the Chapter 13 plan. Without an evidentiary hearing, the plan was confirmed summarily on December 19, 2001. The Debtor defaulted on direct payments. Citifinancial filed a motion for relief from the automatic stay. The parties agreed to allow the Debtor to pay the post-petition arrearage through the plan. A consent order, as amended, was entered in April of 2002; Citifinancial filed an amended arrearage claim consonant with the order.

On January 17, 2003, the Debtor and his wife, Lula Baldwin, filed a complaint in state court against Citifinancial, Inc. and others alleging claims arising from the loan transactions with the Creditor. The Baldwins' state court complaint advanced the following claims: 1) fraudulent misrepresentation and/or omission, 2) negligent hiring, training and supervision, 3) wanton hiring, training and supervision, 4) unconscionability, and 5) unjust enrichment. The Consumers did not learn about this lender liability action until January of 2003. They were in possession of loan documents and statements made at the closing, but there is no indication that the Consumers had actual knowledge of the

cause of action including the Creditor's allegedly tortuous internal operations.

The Defendants removed the state court action to the bankruptcy Court on January 23, 2003. Citifinancial Corporation 216 LLC filed a counterclaim requesting judicial foreclosure on the mortgage. The Consumers filed a motion, which is currently pending before the bankruptcy court, to remand the action to state court. The Creditor then filed a motion to enjoin the Debtor from prosecuting the removed action arguing that the Debtor's claims are barred by res judicata, judicial estoppel, equitable estoppel, waiver, and the effect of 11 U.S.C. § 1327(a).

Less than a month after discovering his claim against the creditor, the Debtor amended his Schedule B on February 7, 2003 to list as personal property a "possible cause of action against Associate Financial Services and/or Transouth Financial Corporation or related corporations regarding requiring Credit Life Insurance, property insurance, or other insurance." Creditor's Exhibit 14. Still pending before the bankruptcy court are an issue of compelling arbitration, a motion to remand, and the Chapter 13 bankruptcy proceeding itself.

### III. STANDARD OF REVIEW

When a district court reviews the proposed findings of fact and conclusions of law filed by a bankruptcy judge in a non-core case heard pursuant to 28 U.S.C. § 157(c)(1), Rule 9033(d) of the Federal Rules of Bankruptcy Procedure sets forth the standard of review.[4] "The district

---

4. The Creditor argues the bankruptcy court erred in ruling that this matter presented a non-core, rather than a core matter. Creditor's Objection at 6 n. 3. The Creditor concedes that "in the instant case, the core/non-core ruling does not affect the standard of review because the facts subject to this proceeding are undisputed. On both a challenge to a bankruptcy court's recommendations and on appeals from the bankruptcy court, questions of law are always reviewed de novo. Thus, the distinction appears to be of no consequence." *Id.* The court does not address this issue because the differences between the two standards of review do not appear to have any impact on this case. Applying the

judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." FED. R. BANKR. P. 9033(d).[5] A district court may refer a case to a bankruptcy judge for proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). Any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. *Id.*

## IV. DISCUSSION [6]

### A. Res Judicata and § 1327

■■■■ "Federal preclusion principles apply to prior federal decisions, whether

standard of review applicable to non-core matters would generally in theory favor the objecting party, in this case the Creditor. The Debtor, however, suffers no prejudice from this more exacting review; consequently, the court, at this time, does not address the issue. If this issue is of future significance whether with regard to a motion to remand or any other matter in the proceedings in the bankruptcy court, this court remains receptive to addressing an objection to the bankruptcy court's decision on the core/non-core issue.

5. The Debtor provides no indication of whether he wants to have oral argument or offer additional evidence. The Creditor requests oral argument, but seeks review only upon the existing record. Creditor's Objection at 6. The parties briefing has been thorough; the court concludes that oral argument is unnecessary.

6. The court is aware of a decision by the United States Bankruptcy Court for the Middle District of Alabama in *Transouth Fin. Corp. v. Murry*, Adv. Pro. No. 02–3144–WRS. Without expressing any opinion on the merits of the Bankruptcy Court's decision in *Transouth Fin. Corp. v. Murry*, the appeal of which is currently pending before this court, the court notes that the bankruptcy proceedings in this case are on-going and could be affected by the lender liability action. Based upon that case the Debtor asks this court to find that it has no jurisdiction; the Creditor asks this court essentially to ignore the case because it contends that it was wrongly decided. The Debtor contends that "[t]he sole factual difference in the two cases appears to be ... that the bankruptcy cases in *[Murry]* had been dismissed at the time of the filing of the state court lender liability action, whereas, in the case at hand, the bankruptcy case is still open and the Debtor's schedule has been amended to list the lender liability action." Debtor's Notice of Additional Authority at 2. The court does not consider whether the bankruptcy court would have jurisdiction arising under or in Title 11 or whether the bankruptcy court's jurisdiction could arise from an inherent power to enforce its orders. Congress has provided that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Eleventh Circuit noted that "*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990), is the seminal case in this Circuit on the scope of the bankruptcy court's 'related to' jurisdiction." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999). In that case, the Eleventh Circuit adopted the following test:

"The ... test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*In re Lemco Gypsum, Inc.*, 910 F.2d at 788. "The key word ...[in the] test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Toledo*, 170 F.3d at

previously decided in diversity or federal question jurisdiction." *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003). Res judicata, also known as claim preclusion, "bars the parties from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001). To demonstrate that res judicata applies, the party asserting the bar must prove that (1) there was a prior judgment on the merits, (2) entered by a court of competent jurisdiction, (3) with substantial identity of the parties or their privies, (4) involving the same cause of action. *Id.; see also Southeast Florida Cable, Inc. v. Martin County, Fla.,* 173 F.3d 1332, 1336 (11th Cir.1999). If any element is missing, res judicata is inapplicable. *In re Piper Aircraft Corp.*, 244 F.3d at 1296. "At all times the burden is on the party asserting res judicata ... to show that the later-filed suit is barred." *Id.* The confirmation of a Chapter 13 [7] plan by a bankruptcy court of competent jurisdiction that has acted in accordance with the procedural requirements of notice and a confirmation hearing, is given the same effect as a district court's final judgment on the merits. *In re Bateman,* 331 F.3d at 830 (citing *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990)).[8]

1345. The lender liability action is part of the debtor's bankruptcy estate. The claim against the Creditor potentially increases the value of the Debtor's bankruptcy estate and certainly adds an asset under Schedule B. The Eleventh Circuit noted in *In re Alvarez* that "[a]s the malpractice claim belongs to Alvarez's bankruptcy estate, the bankruptcy court clearly has 'related to' jurisdiction over it, as the value of the claim, if it has any, will inure to the benefit of the estate." *In re Alvarez,* 224 F.3d 1273, 1280 n. 15 (11th Cir.2000). The *In re Alvarez* Court also noted the holding in the *In re Toledo* case "that there was 'related to' jurisdiction over adversary proceeding where the value and extent of the estate's indirect interest in partnership property would necessarily be affected by the outcome of the adversary proceeding and where the outcome could have the conceivable effect of partially satisfying one secured creditor's claim, thus freeing up additional money for distribution to unsecured creditors". *Id.* (citing *In re Toledo,* 170 F.3d at 1345–47). Because the lender liability action is part of the bankruptcy estate in an on-going bankruptcy proceedings, the action is "related to" a case under Title 11. *See* 11 U.S.C. § 1334. Regardless of whether the bankruptcy court had jurisdiction, the Creditor's removal also included a reference to diversity jurisdiction, which is unchallenged by the debtor. Thus, in addition to this court having jurisdiction pursuant to 11 U.S.C. § 1334, the Creditor removed this action pursuant to 11 U.S.C. § 1332.

7. The Eleventh Circuit offered the following review of the confirmation and claims process of a Chapter 13 bankruptcy:

In general terms, when a debtor initiates a Chapter 13 bankruptcy, he or she files a petition and, in many instances simultaneously, a proposed plan. The plan contains the treatment to be afforded each creditor, including whether and how much each is to receive during the course of the plan's term. During the petition's pendency, before a Chapter 13 plan is confirmed, debtor and creditor alike have an opportunity to file claims and litigate any dispute regarding the validity and the amount of such claims. *See generally* 11 U.S.C. § 501. This is facilitated through filings and scheduled conferences and hearings. Upon satisfaction of the plan and completion of the plan's term, the debtor is discharged of his or her debts and, in theory, faces a future of solvency. *See* 11 U.S.C. § 1328. The general bankruptcy statutory provisions, 11 U.S.C. §§ 1 to 560, and the specifics of Chapter 13 (Debts of Individuals), 11 U.S.C. §§ 1301 to 1330, define the rights and duties of debtors and creditors, whereas the Federal Rules of Bankruptcy Procedure dictate how to navigate the process.
*In re Bateman,* 331 F.3d 821, 826 (11th Cir.2003).

8. The Eleventh Circuit noted that "[a]lthough *In re Justice Oaks II, Ltd.* applied to a Chapter 11 bankruptcy case, in *In re Clark,* 172 B.R.

■■■■ The bankruptcy court concluded that res judicata did not apply in this case, because the lender liability action did not present the same cause of action that was involved in the confirmation plan. "In determining whether the prior and present causes of action are the same, we must decide whether the actions arise 'out of the same nucleus of operative fact, or [are] based upon the same factual predicate.'" *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir.2003) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1297 (11th Cir.2001)). "The test for 'common nucleus of operative fact' as defined for purposes of res judicata is not simply one of whether the two claims are related to or may materially impact one another." *In re Piper Aircraft Corp.*, 244 F.3d at 1301. In its analysis, a court should "compare the factual issues explored in the first action with the factual issues to be resolved in the second action." *Israel Disc. Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir.1992) (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir.1990)).

■■■■ The res judicata effect of confirming a bankruptcy plan "is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation hearing. Issues that were not mature for decision and could not be appropriately resolved in either the confirmation hearing or in the order confirming the plan are not barred." *In re Seidler*, 44 F.3d 945, 948 (11th Cir. 1995). 11 U.S.C. §§ 1322 and 1325 set forth the criteria that a court is to consider in confirming a Chapter 13 plan. Facts related to the criteria in these provisions are the only facts that are of necessity at issue when a bankruptcy court confirms a

Chapter 13 plan. *See In re Piper Aircraft Corp.*, 244 F.3d at 1299. COLLIER ON BANKRUPTCY, a leading treatise in bankruptcy law, states that "the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the bankruptcy Code." 8 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1327.02[1][c] (15th rev. ed.2003) (footnote omitted); *see also In re Bateman*, 331 F.3d at 830.

> For example, a creditor may not after confirmation assert that the plan was not filed in good faith as required by section 1325(a)(3); that the plan did not propose to pay priority claims in full; that the plan should give a higher valuation to a particular property; that the creditor should have been paid interest; that the debtor is ineligible for chapter 13 relief; that the creditor's interest in the property is not adequately protected or has not been properly treated, assuming the debtor is not in default under the plan, that the debtor does not have a right to cure a default as provided in the plan, or that the plan is otherwise inconsistent with the Code in violation of section 1322(b)(10) or section 1325(a)(1).

8 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1327.02[1][c] (15th rev. ed.2003) (footnotes omitted).

■■ In assessing the claim preclusion impact of the confirmation of a chapter 13 plan, "[i]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." *In re Beard*, 112 B.R. 951, 956 (Bankr.N.D.Ind.1990);

---

701, 704 (Bankr.S.D.Ga.1994), the court applied *In re Justice Oaks* in the Chapter 13

context. We also find it appropriate to do so here." *In re Bateman*, 331 F.3d at 830 n. 8.

*Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir.1995) (concluding that "confirmation of a Chapter 13 plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters"); *see also In re Piper Aircraft Corp.,* 244 F.3d at 1304 (citing *In re Beard* and *Cen–Pen Corp.* in support of a similar proposition). This proposition is not unquestioned; disagreement and attempts at clarification have arisen. *Matter of Marlow,* 216 B.R. 975, 980 (Bankr.N.D.Ala. 1998) (noting that the court "believes, however, that an order of confirmation is entitled to res judicata effect with respect to claims of creditors if certain due process requirements are satisfied."); *see also* Ralph E. Avery, *Chapter 11 Bankruptcy and Principles of Res Judicata,* 102 COM. L.J. 257, 289 (1997).

 Regardless of the understanding embraced by the courts on this issue, the underlying concern remains that the confirmation of a Chapter 13 plan presents a different circumstance than the confirmation of a Chapter 11 plan. Both plans have res judicata impact that will preclude future claims, but the conclusion does not necessarily follow that the same future claims will be precluded. As the bankruptcy court noted, "a chapter 13 plan does not have the same breadth as a chapter 11 plan. Therefore, issues germane to a chapter 11 confirmation may not be germane to chapter 13 confirmation." Proposed Findings at 14 n. 25. The bankruptcy court distinguished chapter 11 from chapter 13 stating that "[c]onfirmation of a chapter 11 plan often results in an immediate discharge, and the plan controls all future disposition of property of the estate. In addition, the court has extremely limited jurisdiction following confirmation of a chapter 11 plan. The plan alone will control the entire relationship between the debtor and creditor after release from all

court supervision." *Id.* The point is echoed in COLLIER, which warns that an "important distinction is to be drawn between the legal effect of an order of confirmation entered in a chapter 11 case and that entered in a chapter 13 case. The order confirming a chapter 11 plan discharges pre-petition debts under most circumstances. Confirmation of a chapter 13 plan is not a discharge." 8 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1327.02[3] (15th rev. ed.2003) (comparing 11 U.S.C. § 1141(d) with 11 U.S.C. §§ 1327, 1328). "Unless the chapter 13 debtor receives a discharge under section 1328, creditors are barred from recovering their claims only until the dismissal of the chapter 13 and only to the extent that payment was received under the plan." *Id.*

 A difference also exists between the impact on property, both debtor's and creditor's, in a Chapter 13 bankruptcy and a Chapter 11 bankruptcy. "Section 1327(c) states that the property covered by a Chapter 13 plan is free and clear of only those claims of creditors that the plan addresses. Under the plain terms of the statute, therefore, property of a Chapter 13 debtor can be subject to the continuing claims of creditors so long as those claims were not 'provided for' by the debtor's Chapter 13 reorganization plan." *In re Reg'l Bldg. Sys., Inc.,* 254 F.3d 528, 532 (4th Cir.2001) (citing 11 U.S.C. § 1327(c)). Unlike Chapter 13 where "a lien can be extinguished only if the plan provides for it, under Chapter 11 a lien can be extinguished so long as the property to which the lien attaches is dealt with by the plan." *Id.* In the case before the Fourth Circuit, "Universal's lien was extinguished because the property to which it seeks to attach its lien was dealt with by a confirmed Chapter 11 plan. And as previously explained, § 1141(c) releases any property dealt with by a Chapter 11 plan from

all claims not expressly preserved." *Id.* For a variety of reasons from statutory language to practical impact, the Fourth Circuit found these distinctions to be reasonable.[9]

The bankruptcy court also points out that the bankruptcy case is still currently pending before it. Proposed Findings at 15–16. In the on-going action before the bankruptcy court, the Debtor has amended his asset disclosure in schedule B to include a counter-claim, the lender liability action, that he was unaware of when filing for a chapter 13 bankruptcy. The right to amend petitions, lists and schedules in the bankruptcy proceeding is governed by Federal Rule of Bankruptcy Procedure 1009, which provides for a general right to amend:

(a) A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time

9. The Fourth Circuit stated:

This divergent treatment of liens is quite sensible—not only because § 1141(c) and § 1327(c) use different language, but also because Chapter 11 and Chapter 13 serve different purposes. First, as the bankruptcy court noted, "chapter 13 is generally a consumer bankruptcy chapter" because "relatively few chapter 13 debtors" operate a business. *In re Reg'l Building Sys.*, 251 B.R. at 281. Indeed, the bankruptcy code contains debt limitations on Chapter 13 filings which necessarily limit the complexity of a Chapter 13 reorganization. *See* 11 U.S.C. § 109(e). Second, a Chapter 13 debtor can choose not to deal with certain secured claims. *See id.* §§ 1325(a)(5), 1322(a). This is why under § 1327(c), unaddressed secured claims pass through a Chapter 13 reorganization unaffected even if the property subject to the claim is addressed by the plan. *See Cen–Pen*, 58 F.3d at 94. Third, Chapter 13 creditors do not vote on the debtor's plan. *See In re Fillion*, 181 F.3d 859, 862 (7th Cir.1999) ("Creditors do not vote on a Chapter 13 plan."). Chapter 11, by contrast, governs more complicated reorganizations and has no provision allowing a debtor to ignore secured claims. Further, Chapter 11 contemplates that *every* secured creditor whose rights will be impaired by the reorganization will be notified, assigned to a class, and will vote on the plan. *See* 11 U.S.C. §§ 1123, 1125, 1126, 1129(a)(10). Indeed, in this case Universal was notified of RBS' Chapter 11 petition, participated in the reorganization, and had an opportunity to object to the plan.

In order for Chapter 11 creditors to make an informed judgment about whether to vote for the plan, they necessarily must know what property is a part of the plan, whether that property is subject to any liens, and how those liens are being treated. This is especially true when a Chapter 11 plan proposes a refinancing of the business or a transfer of assets. Unlike Chapter 13, Chapter 11 expressly contemplates that a reorganization will result in the sale or transfer of parts of the debtor's estate. *Compare id.* § 1322 with *id.* §§ 1123(a)(5)(B), 1123(c). It is not surprising, therefore, that Congress sought to maximize the information available to those receiving the debtor's assets by requiring all outstanding claims to be identified by the plan or the order confirming the plan. Indeed, it would be imprudent for any creditor to accept a debtor's property as satisfaction for his claim without knowing whether some unidentified third party is lying in wait with a lien. Similarly, refinancing could be inestimably more difficult if the lender is unsure whether property in the debtor's estate is subject to unidentified liens lurking in the background. *See Matter of Penrod*, 50 F.3d at 463 (explaining how § 1141(c)'s extinguishment of liens not expressly preserved "lowers the costs of transacting with the reorganized firm, thus boosting the chances that the reorganization will succeed.").

Given all of these considerations, it was perfectly sensible for Congress to adopt a rule stating that once property comes within the ambit of a confirmed Chapter 11 plan, it is free and clear of all claims not expressly preserved. And adopting a different rule for Chapter 13 cases also makes sense given the less complex estates at issue, the fact that a Chapter 13 plan need not address all secured debts, and the fact that Chapter 13 creditors do not vote on the debtor's plan.

*In re Reg'l Bldg. Sys., Inc.*, 254 F.3d at 528.

before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

The Eleventh Circuit has indicated that the proper operation of the bankruptcy laws requires the debtor's full and honest disclosure. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). Thus, the Eleventh Circuit expresses no tolerance for parties withholding for strategic purposes claims of which they are aware. The court will not approve of or permit a debtor to "re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, [for to do so] suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." *Id.*[10] Generally, however, the amendment process adheres to a rather "permissive approach". Although a court may "deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors[,]" outside of these exceptions, a court's discretion is curtailed. *Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982) (discussing Fed. R. Bankr.P. 110, predecessor to Fed. R. Bankr.P. 1009); *see also Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir.1993) (finding that "[e]xceptional circumstances may prevent a debtor from amending schedules. Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties."); *In re Kaelin*, 308 F.3d 885, 888 (8th Cir.

2002); *In re Michael*, 163 F.3d 526, 529 (9th Cir.1998); *In re Green*, 268 B.R. 628, 655–56 (Bankr.M.D.Fla.2001). In order to prevent the amendment, a party objecting bears the burden of demonstrating through clear and convincing evidence that the amendment is a result of bad faith or prejudices the creditors. *Matter of Yonikus*, 996 F.2d at 872; *In re Wood*, 291 B.R. 219, 228 (1st Cir. BAP 2003); *In re Talmo*, 185 B.R. 637, 645 (Bankr.S.D.Fla.1995) (stating that "[b]ad faith or prejudice to creditors must be shown by clear and convincing evidence."). An allegation of bad faith or prejudice standing alone is insufficient to prevent the amendment. *Id.*

The debtor's concealment or attempt to conceal assets is generally the basis for a finding of bad faith. *Arnold v. Gill*, 252 B.R. 778, 785 (9th Cir. BAP 2000). As for prejudice, when the case is not yet closed, "[s]imple delay in filing an amendment ... does not alone prejudice creditors." *Matter of Doan*, 672 F.2d at 833. Also, that an exemption would be granted, if found to be timely filed, would not be prejudicial. *Id.* Prejudice may be shown through economic loss, but that financial loss must extend beyond an asset becoming exempt, beyond the financial impact of the asset being amended to the schedule. *See In re Kaelin*, 308 F.3d at 890–91. Also "prejudice may be established by showing harm to the litigating posture of parties in interest. If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny

---

10. There is no indication that the Debtor in this case was concealing his claim. He amended his schedule B to include the cause of action within one month of discovering it, and the confirmation hearing had already occurred prior to his discovery. The Debtor was not aware of this cause of action before January of 2003, and there is nothing in the record to indicate that this amendment to his schedule was made in bad faith.

amendment." *In re Talmo,* 185 B.R. at 645. Additionally, "an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate." *Id.* Demonstrating prejudice alone is not sufficient to warrant preventing the debtor from being able to amend his or her schedules; rather, the creditors must show that the prejudice they suffer outweighs the prejudice to the debtor caused by the denial of the opportunity to amend. *In re Arnold,* 252 B.R. 778, 785 (9th Cir. BAP 2000); *see also In re Osborn,* 24 F.3d 1199, 1206 (10th Cir.1994); *Barrett v. Commonwealth Federal Sav. and Loan Ass'n,* 111 B.R. 78, 81 (E.D.Pa.1990); *Matter of Brown,* 56 B.R. 954, 958 n. 11 (Bankr.E.D.Mich.1986) (interpreting an Eleventh Circuit case *Matter of Doan*).

■■■■ A debtor is allowed to amend his or her schedule "as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a). Thus, if a case has not been closed, amendment is still permitted. *In re Tippins,* 221 B.R. 11, 18 (Bankr.N.D.Ala.1998); see also *In re Osborn,* 24 F.3d 1199, 1206 (10th Cir.1994) (indicating that where a bankruptcy case is not closed, a party may amend his or her schedules subject to the limitations imposed by bad faith and prejudice requirements); *but see In re Wolfberg,* 255 B.R. 879, 884 (9th Cir. BAP 2000) (addressing post-confirmation amendments within the context of Chapter 11 and noting that "[t]here are cases that hold that a chapter 13 debtor can amend his or her schedules to add exemptions after confirmation of a chapter 13 plan.... We do not find those cases persuasive.") (internal citations omitted). The plain language of Rule 1009 allows for amendment up until the point when the case is closed, thus, although there may be some limitations on the right to amend, confirmation of a Chapter 13 plan is not by itself one of the limitations.

*See* Fed. r. bankr. p. 1009(a). The ability of a debtor, however, to amend a schedule is not co-extensive with the success of the debtor on that claim. *See In re Osborn,* 24 F.3d at 1206 (citing *Redmond v. Tuttle,* 698 F.2d 414, 417 (10th Cir.1983)) (stating that the debtor's ability to successfully amend a schedule does not resolve the issue, because "[w]hether the claims of exemption contained in that amendment will be approved if an interested party timely objects ... is a separate issue."); *see also In re Wolfberg,* 255 B.R. at 883 (noting that the "issue before the bankruptcy court was an objection to the exemption. Even if debtors could amend their schedules to claim the exemption, the mere fact that they can claim the exemption does not necessarily mean that they are entitled it.").

■■■■ The property of the debtor's estate within the context of a Chapter 13, as in a Chapter 11 bankruptcy, "includes in general 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Thomas,* 883 F.2d 991, 995 (11th Cir.1989) (citing 11 U.S.C. § 541). As in a Chapter 11 proceeding, the debtor is required to "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1); *see also In re Coastal Plains, Inc.,* 179 F.3d 197, 207–08 (5th Cir.1999) (stating that the "Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."). A debtor must disclose all potential causes of action including litigation that is likely to arise in a non-bankruptcy setting. *In re Coastal Plains, Inc.,* 179 F.3d at 208; *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557

(9th Cir.1992). "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed." *Id.; see also In re Envirodyne Indus., Inc.,* 183 B.R. 812, 821 n. 17 (Bankr.N.D.Ill.1995). The duty to disclose a cause of action in bankruptcy proceeding is a continuing one. *In re Coastal Plains, Inc.,* 179 F.3d at 208. "If the debtor is not knowledgeable of all the facts giving rise to a civil action before the filing of his or her petition and financial schedules, the debtor must amend those schedules when he or she becomes aware of the existence of the action because it is an asset of the bankruptcy estate." *Donato v. Metropolitan Life Ins. Co.,* 230 B.R. 418, 421 (N.D.Cal.1999).

 Actual knowledge of a potential claim, however, is not a requirement for res judicata to bar a subsequent action. *Johnson v. SCA Disposal Services of New England, Inc.,* 931 F.2d 970, 977 n. 20 (1st Cir.1991) (noting that "a party's actual knowledge of a potential claim is not necessary for claim preclusion purposes."); *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1316 (4th Cir.1996). Thus, "[f]or purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986). An exception, however, exists to the general principle that lack of knowledge will not prevent the application of res judicata. This exception "is found in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action." *Harnett v. Billman,* 800 F.2d 1308, 1313

(4th Cir.1986) (citing Restatement (Second) of Judgments § 26 comment j) (adding that the "result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action."); *see also Western Systems, Inc. v. Ulloa,* 958 F.2d 864, 871–72 (9th Cir.1992) (stating that "[i]gnorance of a party does not, however, avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party."); *McCarty v. First of Georgia Ins. Co.,* 713 F.2d 609 (10th Cir.1983); *Livingston v. ITT Consumer Fin. Corp.,* 795 F.Supp. 921, 924 (D.Minn.1992). Without fraud, misrepresentation, or concealment, justifiable ignorance of facts underlying a cause of action or claim will be not sufficient to prevent claim preclusion from barring subsequent litigation. *Engelhardt v. Bell & Howell Co.,* 299 F.2d 480, 484 (8th Cir.1962) (citing Freeman on Judgments, 5th Ed., Vol. 2, § 553, p. 1178); *see also Livingston v. ITT Consumer Fin. Corp.,* 795 F.Supp. at 924 n. 2.

 The Eleventh Circuit has stated that "[t]he purpose behind the doctrine of res judicata is [to] '... protect[ ] [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserve[ ] judicial resources, and foster[ ] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir.1999) (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). The doctrine of res judicata, "[b]y declaring an end to litigation, ... adds certainty and stability to social institutions. This certainty in turn generates public respect for the courts. By preventing relitigation of issues, res judicata conserves judicial time and resources." *Precision Air Parts, Inc.*

*v. Avco Corp.*, 736 F.2d 1499, 1503 n. 4 (11th Cir.1984). In addition to this aid to the judicial process, res judicata "also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit, and avoidance of conflicting rights and duties from inconsistent judgments." *Id.* An end to the litigation does occur, in part, through the confirmation of a Chapter 13 plan, but an end to litigation of what issues remains at question.

■ A key question in regard to the imposition of the bar of claim preclusion is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." *In re Piper Aircraft Corp.*, 244 F.3d at 1301; *see also D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 40 (5th Cir.1989) (holding that "neither the notion of res judicata nor that of compulsory counterclaim has application to those contested matters where the claim sought to be barred could not effectively have been litigated."). The bankruptcy court indicates that "the lender liability action could not have been 'effectively litigated' at the confirmation hearing." Proposed Findings at 13 (internal citation omitted). The court noted that it "often has between 50 to 90 cases on any one chapter 13 confirmation docket. Besides being prohibitive, litigating the actions together would be neither necessary nor an efficient use of the court's resources." *Id.* (footnote omitted).

■ Nevertheless, the Creditors argue that the confirmation of a Chapter 13 plan has a res judicata or claim preclusion effect; the Debtors question this notion. The Creditors are correct; the confirmation of a Chapter 13 plan has a claim preclusion effect. *In re Bateman*, 331 F.3d at 830. Reviewing the cases cited by the Creditors and a number of others, it is apparent that if this case arose in the context of a Chapter 11 action, if the bankruptcy case had been discharged or closed, if the Debtors had challenged the loan on another legal theory, or if the Debtors had not amended their schedules, the issues confronting this court would be much narrower. The question, however, at issue in this case is a different one. The question in this case is whether a debtor, who becomes aware of the facts and law underlying a claim after the confirmation of a Chapter 13 plan, but before discharge or closure of the case, and who amends his schedule B to list a claim for a possible cause of action within a month of discovering a claim that arises from the creditor's misrepresentations to the debtor, is barred by res judicata from pursuing the claim, even though the bankruptcy court expresses hesitancy about whether the lender liability action could have been effectively litigated.

Though there are some differences in the two cases, the United States Bankruptcy Court for the Northern District of Alabama in *In re Tippins*, 221 B.R. 11 (Bankr. N.D.Ala.1998) confronted a similar situation to that presented in this case. The court found that res judicata would apply. *In re Tippins*, 221 B.R. at 29; *but see In re Harrison*, 259 B.R. 794, 797 (Bankr. M.D.Ga.2000) (finding res judicata would not apply in Chapter 13 context where the "Trustee lacked knowledge, prior to confirmation, upon which to initiate an adversary proceeding to avoid First Family's security interest."); *see also In re Marlow*, 216 B.R. at 980 (focusing upon Marlow knowing about her claim when filing her Chapter 13 petition in determining that res judicata would apply). This court, however, does not reach the same conclusion as the *Tippins* court. As previously discussed, COLLIER ON BANKRUPTCY states that "the

binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the bankruptcy Code." 8 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1327.02[1][c] (15th rev. ed.2003) (footnote omitted). Furthermore, an "important distinction is to be drawn between the legal effect of an order of confirmation entered in a chapter 11 case and that entered in a chapter 13 case. The order confirming a chapter 11 plan discharges pre-petition debts under most circumstances. Confirmation of a chapter 13 plan is not a discharge." 8 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1327.02[3] (15th rev. ed.2003) (comparing 11 U.S.C. § 1141(d) with 11 U.S.C. §§ 1327, 1328). Also, "[u]nless the chapter 13 debtor receives a discharge under section 1328, creditors are barred from recovering their claims only until the dismissal of the chapter 13 and only to the extent that payment was received under the plan." *Id.* What these points illustrate, as does much of the preceding discussion, is that Chapter 13 and a Chapter 11 bankruptcy proceedings are two distinct processes, and that their impact on property, both a debtor's and a creditor's, is divergent. Thus, as ably pointed out by the bankruptcy court, the same issues are not necessarily implicated in both proceedings, and the court's relationship with the parties differs after the confirmation of the respective plans. Proposed Findings at 10–16.

Consequently, the claim preclusion impact of the confirmation of a Chapter 13 plan should not necessarily be identical to the claim preclusion impact of a Chapter 11 plan. This court concludes that a Debtor, who discovers a claim, facts and law, after the confirmation of his or her Chapter 13 plan, but before the debt is discharged or the case closed, showing that a Creditor engaged in misrepresentations and fraud in a loan with regard to which the debtor is currently proceeding in bankruptcy, and who successfully amends his or her bankruptcy schedule to include a claim for that fraud and misrepresentation, is not barred by res judicata from pursuing that claim. To conclude otherwise would be to accept that a party who is not aware of the facts or law underlying a claim, and hence under no duty to report the claim, but who is under a continuing duty to report claims as they become known and who is permitted to amend a bankruptcy schedule to do so, is barred by res judicata from pursuing the claim, even though the case remains on-going before the bankruptcy court. Considering the concerns of the bankruptcy court with regard to the ability of the Debtor to effectively litigate his claim and the reasons previously discussed, this court concludes that the Debtor's cause of action is not barred by res judicata.[11]

The Creditors also object to the bankruptcy court's proposed findings of fact and conclusions of law on the basis of 11 U.S.C. § 1327(a). The application of section 1327, however, is in no relevant way distinguishable from the previous discussion of res judicata. The Eleventh Circuit has stated that it is " § 1327 [that] gives res judicata effect to a confirmed Chapter 13 plan." *In re Bateman,* 331

---

11. The court has not uncovered any indication from the record of an objection in the bankruptcy proceedings to the Debtor's amendment of his schedule B form to include a possible cause of action. The parties have focused on other legal issues in their briefing.

Due to the complexity of this subject area, the on-going nature of this case, and the fact this issue only adds to the court's concern about imposing res judicata in this case, other than noting the issue, the court will not pursue this line of inquiry any further at this time.

F.3d 821, 829 (11th Cir.2003). The preclusion imposed by § 1327 is "somewhat harsher than common law issue preclusion." *Id.* at 830. Pursuant to § 1327, any issue that has been raised or that could have been raised prior to or during confirmation are precluded from litigation after confirmation. *Id.; In re Starling,* 251 B.R. 908 (Bankr.S.D.Fla.2000). As § 1327 is the impetus for providing claim preclusion to the confirmation of a Chapter 13 plan, this is the standard that the court has applied in addressing the Creditor's objection to the bankruptcy court determination on the issue of res judicata. Thus, for the reasons discussed above, the court finds that § 1327 does not apply to bar the debtor's claim.

B. Judicial Estoppel

 Judicial estoppel, which is an equitable doctrine that is designed to prevent the judicial process from being improperly used, is invoked at a court's discretion. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The doctrine of judicial estoppel "is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Alabama v. Shalala,* 124 F.Supp.2d 1250, 1265–66 (M.D.Ala.2000) (quoting *Talavera v. School Bd. of Palm Beach County,* 129 F.3d 1214, 1217 (11th Cir.1997)). Although not the only factors to be considered, two prominent considerations in the Eleventh Circuit's judicial estoppel analysis are the following: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002) (finding that these factors and the Eleventh Circuit's approach in general are consistent with *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)); *see also Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1293–94 (11th Cir.2003) (applying, because the Supreme Court decision was unrelated, these factors after *Salomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302, 1308 (11th Cir.2001) was vacated by the Supreme Court). The intent required for judicial estoppel is not met by simple error or inadvertence; purposeful contradiction is required. *Barger,* 348 F.3d at 1294. Concealment of claims in a bankruptcy proceeding can warrant the application of judicial estoppel. *Id.* The court can infer deliberate or intentional manipulation where the debtor, who fails to report a claim, has both a motive for concealing the claim and knowledge of the existence of the claim. *Id.* This case widely differs from *Barger.* In the present case, the debtor was not aware of his claim and upon becoming aware, he promptly amended his schedule. *Id.* at 1294–96. Judicial estoppel "looks toward cold manipulation[;]" this type of purposeful manipulation of the judicial process is lacking in this case. *Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973); [12] *see also Barger,* 348 F.3d at 1294–97. Thus, judicial estoppel does not apply.

C. Equitable Estoppel

 Under the doctrine of equitable estoppel, the party claiming estoppel must demonstrate that (1) the party to be estopped misrepresented material facts;

---

12. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *Beasley v. Conopco, Inc.,* 273 F.Supp.2d 1239, 1249 (M.D.Ala.2003) (citing *National Companies Health Ben. Plan v. St. Joseph's Hosp. of Atlanta, Inc.,* 929 F.2d 1558, 1572 (11th Cir.1991), *abrogated on other grounds by, Geissal v. Moore Medical Corp.,* 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998); *see also Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). The Creditor, not the Debtor, was aware of the facts underlying his cause of action; consequently, equitable estoppel does not apply.

### D. Waiver

"Waiver is the voluntary, intentional relinquishment of a known right." *Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1347 (11th Cir.1994). The debtor was not aware of his cause of action. Upon becoming aware, he amended his bankruptcy schedule B. Thus, he did not voluntarily relinquish a known right; waiver does not apply.

### V. CONCLUSION

For the reasons previously discussed, this court concludes that the Debtor's claim is not barred by res judicata, 11 U.S.C. § 1327, judicial estoppel, equitable estoppel, or waiver. The Creditor's objections to the bankruptcy court's Proposed Findings of Fact and Conclusions of Law on the basis of res judicata and 11 U.S.C. § 1327 are Overruled. Additionally, al-

though the Creditor did not object to the bankruptcy court's Proposed Findings of Fact and Conclusions of Law with regard to the issues of judicial estoppel, equitable estoppel and waiver, the court, nevertheless, has reviewed the Creditor's arguments presented to the bankruptcy court and finds them unpersuasive. The court Adopts the Proposed Findings of Fact and Conclusions of Law of the bankruptcy court, and it is hereby Ordered as follows:

1. Creditors' Motion for Summary Judgment on Count 1 of its Complaint, seeking to enjoin Consumers from pursuing their lender liability action, is Denied, and judgment is entered in favor of Sam Baldwin and Lula Baldwin on that count.

2. This matter is returned to the bankruptcy court for further proceedings.